FILED

2012 May-14  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **TONY RAY GAUGHT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:11-CV-2681-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

Plaintiff Tony Ray Gaught ("Mr. Gaught") brings this action pursuant to 42 U.S.C. §§ 216(i) and 223 of the Social Security Act (the "Act"). He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1]

---

[1]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Mr. Gaught timely pursued and exhausted his administrative remedies available before the Commissioner.  The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Gaught was a thirty-one -year-old male at the time of his hearing before the administrative law judge (the "ALJ") held on August 2, 2010.  (Tr. 48, 42).  In terms of education, Mr. Gaught completed the tenth grade of high school and later obtained his GED.  (Tr. 49, 48).  Mr. Gaught's prior vocational experience includes positions as a construction laborer, a stocker in a grocery store, a fast food worker, and a cook.  (Tr. 70).

Mr. Gaught  protectively applied for DIB and SSI on January 28, 2009.  (Tr. 18, 81, 79).  Mr. Gaught maintains that he became disabled on November 6, 2008, due to affective mood disorders and other unspecified arthropathies (*i.e.*, joint diseases).  (Tr. 18, 81, 79); *see New Webster's Dictionary and Thesaurus & Medical Dictionary* 898 (1991) (defining arthropathy as "any joint disease").  His claims were denied initially on May 11, 2009.  (Tr. 18, 81, 79).

Mr. Gaught filed a request for a hearing on Mary 14, 2009.  (Tr. 18, 95).  A

---

[2]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

hearing was held on August 2, 2010, in Birmingham, Alabama. (Tr. 18, 42, 44).

On January 24, 2011, the ALJ concluded Mr. Gaught was not disabled as defined by the Act and denied his DIB and SSI applications. (Tr. 18-32). On February 25, 2011, Mr. Gaught submitted a request for review of the ALJ's decision, which was received on March 2, 2011. (Tr. 14). On June 22, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Mr. Gaught becoming the final decision of the Commissioner. (Tr. 1).

On July 27, 2011, Mr. Gaught initiated his lawsuit with this court asking for a review of the ALJ's decision. (Doc. 1). On December 19, 2011, Mr. Gaught filed a brief (Doc. 10) in support of his appeal, and on January 23, 2012, the Commissioner answered with his responsive brief. (Doc. 11). This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, the claimant must be disabled as defined by the Act and the Regulations

promulgated thereunder.[3]  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R.

---

[3]  The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through April 19, 2012.

section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found Mr. Gaught had not engaged in substantial gainful activity since the alleged onset date of his disability, *i.e.*, November 6, 2008.  (Tr. 25; Tr. 31 ¶ 2).  Thus, the claimant satisfied step one of the five-step test.  20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following 'severe' impairments of bipolar disorder and lumbar facet arthropathy at L4-5 and L5-S1[.]" (Tr. 31 ¶ 3).  Accordingly, the ALJ concluded that Mr. Gaught satisfied the second step of the sequential disability evaluative process.  20 C.F.R. § 404.1520(c).

At step three, the ALJ determined that Mr. Gaught did not have an impairment

or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 31 ¶ 4).  Mr. Gaught does not challenge this determination on appeal.

Regarding Mr. Gaught's residual functional capacity ("RFC"), the ALJ found:

> The claimant . . . [can] perform light work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except the claimant can occasionally bend and stoop.  He should primary work with or around things and not the general-public, and contact should be casual.  He can perform simple, repetitive non-complex tasks.  He should avoid unprotected heights. His contact with co-workers and supervisors should be causal and occasional.

(Tr. 31 ¶ 5).[4]

The ALJ also indicated that Mr. Gaught could "occasionally bend and stoop" and that "[i]f he complies with his assigned residual functional capacity, the

---

[4] The Regulations define light work as:

(b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through April 19, 2012).

claimant's pain and bipolar disorder are reasonably expect to result in no greater than mild to moderate functional restrictions. (Tr. 27). In support of his RFC determination, the ALJ gave great weight to the mental assessment of Mr. Gaught performed by the state agency non-examining medical consultant. (*Id.*).

Against this backdrop, and in reliance upon testimony from a vocational expert, the ALJ concluded that Mr. Gaught's impairments prevented him from performing past relevant employment. (Tr. 29; Tr. 31 ¶ 6). Because of the ALJ's finding that Mr. Gaught was unable to perform past relevant work, it was necessary to continue to step five of the sequential analysis. (Tr. 29-30).

Using the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ determined that Mr. Gaught was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 30). Examples of such possible light and unskilled jobs included employment as a poultry plant worker and hand packager. (*Id.*). Potential sedentary employment was in the area of assembly. (*Id.*). Accordingly, the ALJ concluded Mr. Gaught was not disabled as defined by the Social Security Act, and denied his DIB and SSI claims. (Tr. 30; Tr. 32).

## ANALYSIS

In this appeal, Mr. Gaught raises several different issues, including whether the

ALJ erred in his consideration of the medical source opinion[5] provided by Charles Houston, Sr., Ph.D. ("Dr. Houston").  The court turns to this issue first and agrees with Mr. Gaught that, under the circumstances of his case, the Commissioner has committed reversible error.[6]

As part of his denial decision, the ALJ acknowledged, by way of a summary (Tr. 22), the medical source statement by Dr. Houston, an examining physician, who conducted a mental status evaluation of Mr. Gaught on March 24, 2009, and who provided the following written vocational assessment of him on April 21, 2009:

> Claimant's ability to follow instructions in a work setting and his ability to accept supervision are significantly affected by his psychiatric problems.  He has serious difficulty interacting with almost everyone. The stressors of work would exacerbate his illness.
> Current GAF: 45
> Highest GAF past year:

(Tr. 284; *see also* Tr. 280-82; Tr. 282 ("His ability to meet the demands of competitive employment is effected by his psychiatric problems.")).

Nowhere in his decision did the ALJ discount Dr. Houston's report or

---

[5]   "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'"  SSR 96-5p.

[6]   As a result, the court does not reach the merits of the other issues presented on appeal.

otherwise explain the weight he afforded to it.  Additionally, the ALJ gave great weight to a non-examining doctor, Lee Blackmon, M.D. ("Dr. Blackmon"), who found that Mr. Gaught's psychiatric problems posed only either "not significant" or "moderate limitations" on his vocational functioning.  (Tr. 27; *see also* Tr. 301-04).

In *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987), the Eleventh Circuit explained:

> In assessing the medical evidence in this case, <u>the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor</u>. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so.  *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (per curiam). <u>The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence</u>.  *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (per curiam).
>
> <u>The ALJ, here, disregarded these rules in assigning weight to the various medical opinions</u>. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. <u>Their opinions were entitled to little weight, however, and could not serve as substantial evidence</u>.

*Sharfarz*, 825 F.2d at 279-80 (emphasis added).  Mr. Gaught relies upon *Sharfarz* in support of his position on appeal.  (Doc. 10 at 10).

In responding to this issue, the Commissioner suggests that the ALJ's omission is excusable because he implicitly accepted Dr. Houston's findings:

> While Plaintiff argues the ALJ ignored Dr. Houston's opinion and failed to state the weight he gave the opinion, the Commissioner contends that the ALJ's ultimate RFC finding accounts for Dr. Houston's opinion. Clearly the ALJ was aware of and evaluated Dr. Houston's opinion (Tr. 22, 28). While Dr. Houston found that Plaintiff would have significant limitations, he did not find Plaintiff would be precluded from interacting with others, but only found Plaintiff had "serious difficulty" (Tr. 284). As noted above, the ALJ found Plaintiff capable of work with the following restrictions: Plaintiff should primarily work around things and not the general public; should have only casual contact; Plaintiff could perform simple, repetitive, non-complex tasks; and Plaintiff's contact with coworkers and supervisors was to be casual and occasional (Tr. 31, Finding 5). Thus, the ALJ limited Plaintiff's interaction to jobs requiring only casual contact and jobs requiring Plaintiff primarily be around things and not the general public (Tr. 31, Finding 5). Thus, the ALJ accounted for Dr. Houston's opinion in that regard.
>
> Moreover, regarding Dr. Houston's opinion that Plaintiff's ability to follow instructions in a work setting and his ability to accept supervision were "significantly affected" (Tr. 284), it is again contended the ALJ's RFC finding accounted for that opinion by limiting Plaintiff to work involving only simple, repetitive, non-complex tasks and work where his contact with co-workers and supervisors was to be casual and occasional (Tr. 31, Finding 5). These restrictions also accounted for Dr. Houston's opinion that Plaintiff had "some" problems with concentration "but was fairly persistent" (Tr. 282). As noted above, Dr. Houston found that Plaintiff adapted well to the changing conditions of the evaluation. <u>According, while the ALJ may not have explicitly stated the weight he gave to Dr. Houston's opinion, any potential error in that regard is harmless because the ALJ's detailed mental RFC finding accounted for Dr. Houston's opinion, and substantial evidence supports the ALJ's findings.</u>

11

(Doc. 11 at 8-9) (footnote omitted) (emphasis added).

Absent from the Commissioner's brief is any authority which confirms that an ALJ's assigning <u>great weight</u> to an opinion from <u>a non-examining physician</u> while also failing to expressly assign <u>any weight</u> to a competing opinion from <u>an examining source</u> is not reversible error. Also missing from the Commissioner's brief is an acknowledgment of *Sharfarz*, much less an explanation of why the court should disregard it and its summary of the applicable "rules" about medical source opinions. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Moreover, in light of the Eleventh Circuit's unambiguous discussion in *Sharfarz* of how an ALJ <u>must</u> handle medical opinion evidence (*i.e.*, requiring the ALJ (i) to state with particularity the weight assigned to an examining opinion, (ii) to articulate the reasoning behind such a weight measure, and (iii) to afford little weight to a competing non-examining opinion), the court is not inclined to adopt the Commissioner's contention that the ALJ's openly flawed decision was somehow cured implicitly, especially in the absence of a binding opinion embracing such a

12

deviation from *Sharfarz* and the cases cited therein.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence.   Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 14th day of May, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

13